UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PEARL SEAS CRUISES, LLC, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CASE NO. 4:13-cv-02790 |
| § | |
| LLOYD'S REGISTER NORTH § | |
| AMERICA, INC., § | |
| § | |
| Defendant. § | JUDGE DAVID HITTNER |

### DEFENDANT'S MOTION TO DISMISS CLAIMS
### UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(3)

Defendant Lloyd's Register North America, Inc. ("LRNA") respectfully moves under FED. R. CIV. P. 12(b)(3) for an order dismissing this action brought by Plaintiff Pearl Seas Cruises, LLC ("Pearl Seas"), on the ground that contractual forum selection clauses, by which Pearl Seas is bound by virtue of its claims, require that this litigation be conducted, if at all, in the courts of England.[1]

#### SUMMARY OF ARGUMENT

As indicated in the 12(b)(6) motion filed concurrently with this motion, Pearl Seas seeks to make claims based on LRNA's performance under a contract

---

[1] This motion is filed concurrently with a motion to dismiss under FED. R. CIV. P. 12(b)(6). Because the 12(b)(6) motion provides helpful context, LRNA respectfully suggests that the Court consider that motion first or in conjunction with this alternative, independent request for relief under Rule 12(b)(3).

with a third party, Irving Shipbuilding, Inc. ("Irving").[2] Under that contract (the "Classification Contract"), LRNA agreed to provide classification and certification services pursuant to international conventions of a ship that Irving was building for Pearl Seas.

Two forum selection clauses require that the claims set out by Pearl Seas in its amended complaint (Doc. 5, "Complaint") be dismissed for improper venue. First, the Court should dismiss Pearl Seas' claims that seek direct benefits from the Classification Contract, which contains a mandatory forum selection clause. These claims can only be resolved by reference to that contract. Second, the Court should dismiss Pearl Seas' claims that invoke classification rules, promulgated by LRNA's parent company for the entire group of companies to which LRNA belongs. Those classification rules require that any claims based on ostensible breaches of the rules must be brought in the courts of England. The precepts that require dismissal under Rule 12(b)(3) arise from the "direct benefits estoppel" theory that this Court has previously applied, relying on Fifth Circuit precedent that is directly on point.

---

[2] *See* **Exhibit 1** to the Decl. of T. Protheroe, filed in conjunction with LRNA's motions to dismiss.

## ARGUMENT AND AUTHORITIES

I. **Mandatory Forum Selection Clauses Require That Pearl Seas' Action Against LRNA Be Dismissed**

Rule 12(b)(3) has been accepted as an appropriate vehicle for dismissing an action under a binding forum selection clause. *See Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n.3 (5th Cir. 2010). Pearl Seas is not a direct signatory to any contract that provides for English courts as the exclusive forum for a dispute over LRNA's services.[3] Nonetheless, on the allegations in the Complaint and under clear Fifth Circuit authority as interpreted recently by this Court, Pearl Seas is bound by the mandatory forum selection clauses in the contract between LRNA and Irving and in the classification rules promulgated by LRNA's parent, Lloyd's Register Group Limited.[4]

As the Fifth Circuit recognized in *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517-18 (5th Cir. 2006), and as this Court further explained in *Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 921 F. Supp. 2d 685, 694-95 (S.D. Tex. 2013), under the "direct-benefits estoppel" theory, a plaintiff may be bound

---

[3] The only contract between Pearl Seas and LRNA that is referred to in the Complaint is a "contract for plan approval," which predated the Classification Contract between LRNA and Irving. Complaint ¶ 20; *see also* **Exhibit 4** to the Decl. of T. Protheroe (hereinafter "Plan Approval Contract"). In its original complaint, Pearl Seas sought to base venue on a provision in the Plan Approval Contract specifying that litigation under that contract should be brought in U.S. federal courts. However, in the Complaint, Pearl Seas abandoned any claims under the Plan Approval Contract. Thus, the original basis for Pearl Seas' claim of proper venue in U.S. federal courts has been eviscerated.

[4] **Exhibit 5** to the Decl. of T. Protheroe.

by a mandatory forum selection clause even if the plaintiff was not a signatory to the agreement containing the clause. Such "direct-benefits estoppel" arises when the non-signatory plaintiff "embraces" such an agreement either by "knowingly seeking and obtaining 'direct benefits' from that contract . . . or by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Petrobras Am.*, 921 F. Supp. 2d at 694 (quoting *Noble Drilling*, 620 F.3d at 473).[5] Here, it is clear on the face of the Complaint that both prongs of the theory apply to Pearl Seas' claims in this action.

### A. Pearl Seas Seeks Direct Benefits From the Classification Contract

All of the services performed by LRNA that Pearl Seas cites in the Complaint were provided under or related to the Classification Contract between LRNA and Irving. The Classification Contract provides that "any dispute, claim or litigation . . . arising from or in connection with the Services provided by [LRNA] shall be subject to the exclusive jurisdiction of the English courts and will be governed by English Law." Ex. 1 to Decl. of T. Protheroe ¶ 17. Pearl Seas is bound by that provision under the "direct-benefits estoppel" theory.

According to the Complaint, Pearl Seas had actual knowledge of the Classification Contract containing the forum selection clause. Pearl Seas alleges

---

[5] Although *Hellenic* involved a forum selection clause and *Petrobras* involved an arbitration clause, the two types of clauses "are indistinguishable for enforcement purposes." *Noble Drilling*, 620 F.3d at 472 n.3.

4

that it entered the shipbuilding contract with Irving under which the latter was obligated, among other things, to obtain class certification for the vessel and to pay for the cost of obtaining that certification. Pearl Seas further alleges that Irving requested that LRNA monitor construction of the vessel to assure that it was constructed in accordance with Lloyd's Register's classification rules and requested that LRNA negotiate the price Irving would pay LRNA for those services. Complaint ¶¶ 12-14, 16-17, 19, 23. These allegations establish that Pearl Seas knew of both the existence and the contents of the Classification Contract. Indeed, the Complaint explicitly purports to recite what LRNA's duties were under that contract. *See, e.g., id.* ¶ 24.[6]

It is equally apparent that Pearl Seas is invoking the provisions of the Classification Contract for its own direct benefit. In paragraph after paragraph, the Complaint purports to enumerate LRNA's duties under that contract, alleges that LRNA breached those duties, and alleges that Pearl Seas was injured by those breaches. For example, the Complaint alleges that LRNA was obligated under the Classification Contract to confirm that the vessel's fire boundaries complied with the applicable international convention but that the fire boundary penetrations did not meet the convention's requirements (*id.* ¶¶ 24, 44, 52-54); alleges that LRNA

---

[6]Pearl Seas' actual knowledge of the contract containing the forum selection clause is in contrast to the plaintiff in *Petrobras*. *See* 921 F. Supp. 2d at 694 (finding direct-benefits estoppel did not apply because "[e]ven if it might be inferred that Petrobras knew of the Purchase Order's existence, there is no evidence that Petrobras had actual knowledge of the terms").

was responsible for overseeing construction of the vessel but that its review of the vessel was deficient (*id.* ¶¶ 38, 49); and alleges that LRNA was responsible for assuring that exterior louvers and dampers, as constructed, complied with international convention requirements but nevertheless approved louver and damper construction that did not meet those requirements (*id.* ¶¶ 76-78). Each of these series of allegations is an attempt by Pearl Seas to stand in the shoes of Irving by alleging breaches of the contract between that entity and LRNA.

### B. Pearl Seas Asserts Claims Whose Resolution on the Merits Would Require Reference to the Classification Contract

Additionally, the Complaint demonstrates that Pearl Seas' claims against LRNA are a circuitous attempt to enforce the terms of the Classification Contract between LRNA and Irving, and that those claims could not possibly be determined without reference to that contract. In broad strokes, Pearl Seas alleges:

- that it contracted with Irving to receive a vessel that would "have all regulatory approvals . . . be ready for immediate service . . . . [and] have all 'documentation and national certification . . . for its intended service'";

- that it agreed to retain LRNA as the classification society for its vessels;

- that it requested that LRNA "inspect and monitor the design and construction" of the vessel being built for it by Irving and "oversee its construction";

- that LRNA's duties under the Classification Contract included the obligation "to survey, inspect and classify the vessel in accordance with Lloyd's Register's technical standards, rules and regulations";

6

- that the vessel, as delivered, did not comply with those standards and approvals; and

- that Pearl Seas was damaged, *inter alia*, insofar as it had to pay Irving for a vessel that Pearl Seas alleges was substandard and that it was unable to use for its intended purposes.

*Id.* ¶¶ 12-14, 16, 19, 24, 30-32, 34-35. Try as Pearl Seas does to dress up those allegations in the language of tort claims, they cannot be separated from LRNA's duties under its contract with Irving. Any determination of this case necessarily would entail a detailed analysis of those contractual duties.

## II. Rules for Classification Also Require That Pearl Seas' Action Against LRNA Be Dismissed

The Classification Contract also includes a provision requiring Irving to "accept the relevant Rules and Regulations for Classification" promulgated by Lloyd's Register Group Limited. Those Rules and Regulations in turn require that any party engaging the classification services of any member of the LR group of entities agree that "[a]ny dispute about the Services or the Contract is subject to the exclusive jurisdiction of the English courts and will be governed by English law." Ex. 5 to Decl. of T. Protheroe at Section 10.6. In addition to being bound by the forum selection clause in the Classification Contract itself, Pearl Seas is bound by the forum selection clause in the classification rules because (1) those rules are part of the Classification Contract whose benefits Pearl Seas has invoked by

7

commencing this action, and (2) Pearl Seas, by the very act of bringing this lawsuit, seeks the benefit of the rules themselves.

In this regard, the facts here are indistinguishable from those confronting the Fifth Circuit in *Hellenic*. There, as here, the owner of a vessel (Hellenic) sued a classification society (DNV) for the tort of fraudulent misrepresentation. There, as here, the forum selection clause was not in a contract between DNV and Hellenic but was in the contract between DNV and the entity from which Hellenic had purchased its vessel (Inlet). Because Hellenic's claims, although sounding in tort, arose from DNV's alleged failure to have fulfilled its obligations as the classification society for the vessel, the Fifth Circuit held that Hellenic was bound, not only by the forum selection clause in DNV's contract with Inlet, but also by the clause in DNV's rules. Because the facts here are precisely analogous to those in *Hellenic*, the Fifth Circuit's conclusions control:

> Any lingering doubt whether Hellenic garnered a benefit from DNV's performance of the DNV-Inlet contract is erased by Hellenic's own statements in its complaint: "DNV knew, or should have known," that its representations "were intended for [Hellenic's] ***guidance and benefit*** in a business transaction."
>
> The very nature of the claim brought requires that DNV's performance under the contract [with Inlet] be for Hellenic's benefit. An element of the cause of action [for misrepresentation by a classification society] is the requirement that the classification society must have "in the course of its profession, supplied false information for the [vessel purchaser's] ***guidance*** in a business transaction." . . . Having stated a claim that expressly requires that DNV's performance

> be for Hellenic's benefit, Hellenic cannot avoid the estoppel implications of its position.
>
> Regardless of any benefit, Hellenic maintains that it cannot be bound by the forum selection clause because it has not asserted contractual claims. Although sounding in tort, Hellenic's claim is based upon DNV's failure to follow its own Rules in classing the [vessel].
>
> . . . . The duty owed by DNV to Hellenic based on DNV's alleged misrepresentations arose from the DNV Rules. Hellenic's claim based on DNV's failure to perform in accord with its Rules is therefore subject to the Rules' forum selection clause. Hellenic cannot embrace the Rules by bringing a claim . . . alleging, in essence, a violation of the DNV Rules without accepting the consequence of those Rules.

*Hellenic*, 464 F.3d at 519-20 (emphasis in original).

The allegations in the Complaint are virtually identical to those described in *Hellenic*. To cite only two particularly telling examples, Pearl Seas alleges that "[b]ecause [LRNA] is a Classification Society, Pearl Seas relied on [LRNA] to provide accurate information about the condition of the Vessel." Complaint ¶ 30. Pearl Seas also alleges that among LRNA's "misrepresentations" was its statement that "all class related systems complied with the applicable [Lloyd's Register's] Rules and Regulations." *Id.* ¶ 42. These allegations are strikingly similar to those that led the Fifth Circuit to hold that Hellenic was bound by the rules of the classification society it had sued and, in particular, by the forum selection clause in those rules. *Hellenic*, 464 F.3d at 517-20 (finding that "if Hellenic has a claim for DNV's misrepresentation, it is only because DNV failed to adhere to its Rules

9

when it classed the [vessel]" and therefore holding Hellenic "bound by the DNV forum-selection clause").

Accordingly, for purposes of venue, Pearl Seas is bound by the forum selection clauses in (1) the Classification Contract between LRNA and Irving and (2) the classification rules incorporated into the Classification Contract.

## CONCLUSION

Even if the Court does not dismiss all of Pearl Seas' claims with prejudice under FED. R. CIV. P. 12(b)(6), the Court should dismiss any remaining claims under FED. R. CIV. P. 12(b)(3), without prejudice to Pearl Seas' ability to re-file those claims, should it choose to do so, in the courts of England.

Respectfully submitted,

BECK REDDEN LLP


/s/   Eric J.R. Nichols
Eric J.R. Nichols
State Bar No. 14994900
Southern District of Texas No. 13066
515 Congress Avenue, Suite 1750
Austin, Texas 78701
Tele: 512.708.1000
Fax: 512.708.1002
E-mail: enichols@beckredden.com

*Attorney-in- Charge for Lloyd's Register North America, Inc.*

OF COUNSEL:

Gretchen S. Sween
State Bar No. 24041996
Southern District of Texas No. 562080
515 Congress Avenue, Suite 1750
Austin, Texas 78701
Tele: 512.708.1000
Fax: 512.708.1002
E-mail: gsween@beckredden.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the above has been served on all counsel of record on November 21, 2013, via the Court's electronic filing system.

/s/
Gretchen S. Sween