UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PEARL SEAS CRUISES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:13-cv-02790 |
| | § | |
| LLOYD'S REGISTER NORTH | § | |
| AMERICA, INC., | § | |
| | § | |
| Defendant. | § | |

## MOTION TO DISMISS ON *FORUM NON CONVENIENS* GROUNDS

In light of new authority from the Supreme Court of the United States, Defendant Lloyd's Register North America, Inc. ("LRNA") files this Motion to Dismiss on *Forum Non Conveniens* Grounds.   In support thereof, LRNA respectfully shows the following:

### SUMMARY OF THE ISSUE AND ARGUMENT

The Supreme Court recently decided *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Texas*, 134 S. Ct. 568 (2013).   *Atlantic Marine* substantially changes the burden associated with seeking transfers and dismissals based on forum-selection clauses.  That burden is now placed squarely on the party that files a lawsuit in a forum other than the one specified in a contract's forum-selection clause. Here that party is Plaintiff Pearl Seas Cruises, LLC ("Pearl Seas").  *Atlantic Marine* also holds that a motion to dismiss under Federal Rule of

Civil Procedure 12(b)(3) is not the appropriate vehicle for seeking dismissal based on a forum-selection clause; instead, where "the forum-selection clause point[s] to a state or foreign forum" – as it does here – "the appropriate way to enforce a forum-selection clause" is "through the doctrine of *forum non conveniens*" – using the new analytical framework announced in *Atlantic Marine*.  134 S. Ct. at 580.  In view of this development, LRNA files the instant motion for these two purposes:

First, LRNA demonstrates that the burden is now on Pearl Seas to establish "extraordinary circumstances" why the Court should **not** dismiss this action based on the applicable forum-selection clauses.  *See id.* at 581.  Because Pearl Seas cannot satisfy its burden, this motion should be granted and this case dismissed.

Second, LRNA suggests that, in light of the Supreme Court's recent decision in *Atlantic Marine*, the instant motion should supersede Defendant's Motion to Dismiss Claims Under Federal Rule of Civil Procedure 12(b)(3) [Doc. 9, "12(b)(3) Motion"], which is now pending before the Court. (LRNA filed its Rule 12(b)(3) Motion on November 21, 2013; *Atlantic Marine* was decided on December 3, 2013).[1]  In the interest of judicial economy, the instant motion should, therefore,

---

[1] Pearl Seas filed a Motion for Leave to Supplement Record Concerning LRNA's Pending Rule 12(b)(3) Motion to Dismiss [Doc. 32, "Motion for Leave"], to apprise the Court of *Atlantic Marine*.  Because the United States Supreme Court has now identified a motion to dismiss on *forum non conveniens* grounds as the proper mechanism for seeking dismissal based on a forum-selection clause, this motion supersedes LRNA's 12(b)(3) motion and LRNA asks to withdraw its 12(b)(3) motion.

receive the Court's consideration, and in light of the filing of this motion, the 12(b)(3) motion is obsolete.[2]

## LEGAL STANDARD

With *Atlantic Marine*, the Supreme Court announced both procedural and substantive clarifications of the law governing federal actions in which a defendant seeks to enforce a forum-selection clause.

**1.    *Atlantic Marine* announced a procedural rule, establishing the proper vehicle for seeking enforcement of forum-selection clauses.**

The procedural holding in *Atlantic Marine* implicitly rejects an assumption found in the Fifth Circuit precedent that had guided LRNA in seeking dismissal under Rule 12(b)(3).  *See Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472, n.3 (5th Cir. 2010) (noting that the Fifth Circuit had previously "accepted Rule 12(b)(3) as a proper method for dismissal" in reliance on an arbitration or forum-selection clause).  In *Atlantic Marine*, the Supreme Court rejected the position that a defendant should seek enforcement of a forum-selection clause

---

[2]Also pending before the Court is Defendant's  Motion to Dismiss Claims under Federal Rule of Civil Procedure 12(b)(6) (Doc. 10, "12(b)(6) Motion"), which articulates multiple, distinct reasons for dismissing all claims with prejudice.  LRNA's 12(b)(6) Motion is not affected by *Atlantic Marine* or the arguments made here. But because *Atlantic Marine* underscores the impropriety of forcing parties to proceed with a lawsuit filed in a forum that contravenes an applicable forum-selection clause, and because having to proceed with discovery would prejudice LRNA's rights associated with the selected forum, LRNA urges the Court to consider the instant motion first before discovery advances.  *Cf. Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G.*, 955 F.2d 368, 372 (5th Cir. 1992) (noting how, under a traditional *forum non conveniens* analysis, which involves weighing both public- and private-interest factors, some courts have found dismissals inappropriate "where substantial discovery has [already] taken place" but nonetheless granting dismissal on *forum non conveniens* grounds).

under either 28 U.S.C. § 1406(a) or Rule 12(b)(3). In explaining its rationale, the Supreme Court distinguishes between arguments based on "wrong" or "improper" venue on one hand and arguments seeking to enforce forum-selection clauses on the other hand. *Id.* at 575. The Supreme Court concluded that a venue is not technically "wrong" as long as federal venue statutes are satisfied; therefore, the appropriate vehicle for enforcing forum-selection clauses is either (1) a motion to transfer under 28 U.S.C. § 1404(a) – if the forum-selection clause points to another federal district court; or (2) a motion to dismiss on *forum non conveniens* grounds – if the forum-selection clause points to a state court or foreign forum. *Id.* at 580-81.

2.     ***Atlantic Marine* announced a substantive clarification, requiring that controlling weight be given to forum-selection clauses in all but extraordinary circumstances, which the party resisting enforcement of the clause must establish.**

The substantive holding in *Atlantic Marine* is that valid forum-selection clauses are to be given controlling weight absent "extraordinary circumstances." *Id.* at 581; *see also Brown v. Federated Capital Corp.*, --- F. Supp. 2d ---, 2014 WL 97292, at *1 (S.D. Tex. Jan. 6, 2014) (Hittner, J.) (applying *Atlantic Marine* in assessing a motion to transfer).    In determining whether "extraordinary circumstances" exist, ***only*** the public-interest factors of a traditional section 1404(a) analysis may be considered.    *Atlantic Marine*, 134 S. Ct. at 575. Convenience of the parties is ***not*** a consideration; ***nor are any*** of the "private-

interest factors" that ordinarily govern the analysis under section 1404(a) – such as the connection of parties and witnesses to the forum, where the claims arose, etc. *Id.* at 582.  For a plaintiff to show that the public-interest factors alone somehow weigh against transfer or dismissal is a decidedly "heavy burden."  *Id.* at 575, 581, 583.

Most of *Atlantic Marine* focuses on the proper way to analyze requests to **transfer** an action from one federal forum to another based on a forum-selection clause, because a transfer to another federal district court was at issue in that case. But *Atlantic Marine* also expressly addresses the precise situation here: instances where a defendant seeks to enforce "a forum-selection clause pointing to a state or foreign forum[,]" and the Supreme Court directs that a defendant should do so seeking dismissal under "the doctrine of *forum non conveniens*."  *Id.* at 580.  The Supreme Court clarifies that "because § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum."  *Id.*

Therefore, unless a plaintiff can come forward and establish that the relevant forum-selection clauses are unenforceable under federal law or that "exceptional

circumstances" exist that warrant disregarding the valid forum-selection clauses, the court must dismiss the action.

## BACKGROUND

LRNA is a subsidiary of an English classification society and performs classification services in accordance with the society's Rules and Regulations. Classification societies are organizations that "undertake to arrange inspections and advise on the hull and machinery of a vessel from its initial stages in new building and thereafter." *Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 533 (5th Cir. 2003) (quoting Damien L. O'Brien, *The Potential Liability of Classification Societies to Marine Insurers Under United States Law*, 7 U.S.F. MAR. L.J. 403, 403 (1995) (quoting Eric Sullivan, THE MARINE ENCYCLOPEDIA DICTIONARY 78 (1980)). Classification societies produce certificates that do either one or two things. They certify (1) that a vessel, at "a specific time," complies with the classification society's own rules and/or (2) that it complies with relevant statutory rules of the vessel's flag state. *Id.* at 533. While certification is a prerequisite for ship registry and insurance coverage, a classification society is not "an absolute insurer of any vessel." *Great Am. Ins. Co. v. Bureau Veritas*, 338 F. Supp. 999, 1012 (S.D.N.Y. 1972) (emphasizing that making a classification society "an absolute insurer of any vessel it surveys and certifies" would not be "commensurate with the amount of control that a classification society has over a

vessel" and is "not in accord with the intent of the parties, the fees charged or the service performed"), *aff'd*, 478 F.2d 235 (2d Cir. 1973).

LRNA is a member of the Lloyd's Register group ("LR Group").  LRNA's ultimate parent, Lloyd's Register Group Limited, is a 253-year-old classification society based in England.  Lloyd's Register Group Limited promulgates Lloyd's Register Rules and Regulations for the Classification of Ships ("LR Rules and Regulations"), under which all members of the LR Group provide services.  *See* Exhibit A (excerpt from LR Rules and Regulations 2006).[3]

Pearl Seas alleges that it "agreed to retain Lloyd's Register as the classification society for its vessels," including the cruise ship that is the subject of its Complaint. Complaint ¶ 12.  And according to Pearl Seas, this decision was made even ***before*** Pearl Seas contracted with a ship builder, Irving Shipbuilding ("Irving"), to build this particular vessel for Pearl Seas.  *Id.* ¶¶ 11-13.  ***After*** Pearl Seas decided that Lloyd's Register should be the classification society, Irving contracted with LRNA to provide classification services for the vessel as it was being constructed for Pearl Seas.  *See id.* ¶ 23; *see also* Exhibit B ("Contract for Marine Services during Construction" hereafter "Irving Contract"). The Irving Contract expressly identifies Pearl Seas as the "prospective owner" benefitting from the contract.  *See id.* at 1.

---

[3]All exhibits cited in this motion are attached to the Declaration of Timothy Protheroe filed with this motion.

The LR Rules and Regulations and the Irving Contract contain substantially similar forum-selection clauses:

| Forum-Selection Clause in LR Rules and Regulations (Exhibit A, Section 10.6) | Forum-Selection Clause in Irving Contract (Exhibit B ¶ 17) |
|---|---|
| Any dispute about the Services or the Contract is subject to the exclusive jurisdiction of the English courts and will be governed by English law. | Any dispute, claim, or litigation between any member of the LR Group and the Client arising from or in connection with the Services provided by LR shall be subject to the exclusive jurisdiction of the English courts and will be governed by English law. |

Both of these forum-selection clauses designate the English courts as the exclusive forum for adjudicating disputes "about" or "arising from or in connection with the Services" that are the basis for all of Pearl Seas' claims.

### ARGUMENT AND AUTHORITIES

## I.     This Action Must Be Dismissed on *Forum Non Conveniens* Grounds.

Two contractually valid forum-selection clauses apply to the present case under the doctrine of "direct-benefit estoppel."  And because these valid forum-selection clauses apply to this case, *Atlantic Marine* instructs that the Court must dismiss the case unless Pearl Seas could shoulder the exceedingly heavy burden of showing that public-interest factors alone warrant trumping the forum-selection clauses.  134 S. Ct. at 575, 581, 583.

### A.     Contractually Valid Forum-Selection Clauses Apply to the Present Case.

Because the forum-selection clauses at issue here are found in agreements between LRNA and Irving for services performed *for the benefit of Pearl Seas*, and because Pearl Seas has sued LRNA about those services, arising from those Services, or in connection with those services, the forum-selection clauses apply to this action.

Pearl Seas' reliance on LRNA's performance under the Irving Contract and in accordance with the LR Rules and Regulations is evident from the face of the Complaint. The following allegations, for instance, demonstrate that Pearl Seas' claims are bound up inextricably with the rights and obligations of the parties to the Irving Contract and with LRNA's duties under the LR Rules and Regulations:

- "As a professional Classification Society, Lloyd's Register owes duties to: (a) promote the safety of life, property and the environment, (2) develop technical standards for the design and construction of vessels, (3) approve designs against professional standards, (4) conduct surveys and inspections with due care, (5) act as a Recognized Organization, and (6) ensure that vessels are constructed in accordance with Classification Society Rules as well as federal and international rules, regulations, statutes and treaties." Complaint ¶ 9.

- "The [Irving] Contract made clear that only valid class certificates establish compliance with rules of the classification society." *Id.*¶ 16.

- "The [Irving] Contract required Irving to obtain and pay for classification and to deliver the Vessel with classification certificates; coordinate all regulatory inspections; and 'pay all fees for obtaining certificates, including associated fees of regulatory body inspectors.'" *Id.* ¶ 17 (quoting the Irving Contract).

- "Pearl Seas relied on [LRNA's] review and approval of the plans for the Vessel and [LRNA's] attendant representations." *Id.* ¶ 21.

- "[LRNA] agreed in writing to survey the Vessel during its construction to ensure compliance with Marshall islands laws and regulations, Lloyd's Register's Rules and Regulations and, SOLAS, as required by the [Irving] Contract." *Id.* ¶ 23.

- "As a classification society, Lloyd's Register had a duty to give Pearl Seas complete and accurate information as to whether the Vessel complied with SOLAS, flag State and class requirements." *Id.* ¶ 105.

Try as Pearl Seas does to characterize its allegations as torts, the inescapable reality is that no possible claim for any alleged breach by LRNA vis-à-vis Pearl Seas could have arisen except in connection with the Irving Contract and the LR Rules and Regulations, both of which contain forum-selection clauses that Pearl Seas improperly seeks to avoid.

### B. The Forum-Selection Clauses Are Enforceable Against Pearl Seas under the "Direct-Benefit Estoppel" Theory.

The forum-selection clauses at issue here designate a foreign forum, England, as the place where this dispute should be pursued.  Because the forum-selection clauses point to a foreign forum, the enforceability issue is governed by federal law.  *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997).  Pearl Seas has invoked this Court's admiralty jurisdiction, but federal law also governs

the enforceability of a forum-selection clause in a diversity case. *See Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 563 (D.N.J. 2000).[4]

Additionally, because the forum-selection clauses are in documents that were not signed by Pearl Seas, the precise federal legal proposition that answers the enforceability question is the "direct-benefit estoppel" theory described and applied by the Fifth Circuit in a case involving substantially similar circumstances to this one: *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006) (finding a ship owner bound by forum-selection clauses in both agreement between a classification society and a third party and in the classification society's rules); *see also Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 921 F. Supp. 2d 685 (S.D. Tex. 2013) (Hittner, J.) (applying the direct-benefit estoppel theory).[5]

---

[4]The dispute itself would be governed by English law because the forum-selection clauses also contain a choice-of-law provision. *See* Exhibit A at Section 10.6; Exhibit B, ¶ 17. Under English law, forum-selections are broadly construed. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 218, 224-25 (2d Cir. 2014) (explaining that law designated in the document with the forum-selection clause determines its scope and noting that, under English law, forum-selection clauses are to be "widely and generously" construed). Moreover, because English law applies, LRNA will be entitled to recover all the costs LRNA is incurring in defending this action from Pearl Seas.

[5]In *Petrobras*, this Court applied the direct-benefit estoppel theory, but concluded that there was no evidence that the plaintiffs had "actual knowledge" of the terms of a purchase order between the defendant and a non-party, which contained the arbitration clause upon which the defendant sought to rely. The Court also concluded that the plaintiffs did "not base their claims on the Purchase Order, have disclaimed any reliance on the Purchase Order, and rely entirely on claims based on pre-purchase representations and legally imposed duties[.]" 921 F. Supp. 2d at 696. Therefore, the Court found the doctrine of direct-benefit estoppel did not apply. *Id. Petrobras* is, therefore, easily distinguishable from this case. As explained below, even if Pearl Seas again takes the incredible position – contrary to the narrative in its Complaint – that it did

Under the "direct-benefit estoppel" theory, a mandatory forum-selection clause binds a party who did not sign the contract containing that clause if the non-signatory has "embraced the contract" by "knowingly exploiting the agreement containing the [] clause." *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 518 (5th Cir. 2006) (citations omitted).[6]

Pearl Seas embraced the Irving Contract by knowingly exploiting the agreement containing the forum-selection clause, just as the ship owner had in *Hellenic*.  There, as here, the current owner of a vessel (Hellenic) was suing a classification society (Det Norske Veritas or "DNV"), which had been engaged by a prior owner ("Inlet") to survey the vessel and to certify that it complied with the classification society's rules and international conventions.  *Compare Hellenic*, 464 F.3d at 515 *with* Complaint ¶¶ 8-9, 23  There, as here, the current owner was not a party to the classification agreement between the prior owner and the classification society.  *Compare Hellenic*, 464 F.3d at 517 *with* Complaint ¶ 23.

not know about the terms of the Irving Contract and the LR Rules and Regulations at the time the Irving Contract was executed in September 2006, it is amply clear from the face of Pearl Seas' Complaint that Pearl Seas bases its claims on the Irving Contract and the LR Rules and Regulations, expressly invokes reliance on the Irving Contract and the LR Rules and Regulations, and its claims rely entirely on representations and alleged duties arising from the Irving Contract and the LR Rules and Regulations.

[6]*Hellenic* involves a forum-selection clause virtually identical to the ones at issue here; with this passage, the Fifth Circuit was quoting cases that had applied the same estoppel principle in cases involving mandatory arbitration clauses.  *See, e.g.*, *Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997) (noting that forum-selection clauses and arbitration clauses are indistinguishable for enforceability purposes and enforcing forum-selection clause identical to the one in *Hellenic* and substantially similar to the ones at issue here).

There, as here, the current owner of the vessel alleged that, in making its decision to take the vessel, it relied on the certifications that the classification society had issued under its contract with the prior owner and that the vessel was compliant with its Rules and with international conventions. *Compare Hellenic*, 464 F.3d at 519 *with* Complaint ¶¶ 21-23. There, as here, the plaintiff brought a tort action for damages alleging that the classification society, in providing classification services, had made misrepresentations. *Compare Hellenic*, 464 F.3d at 516 *with* Complaint ¶¶ 96-121. There, as here, the relevant contract between the classification society and the prior ship owner (to which the vessel's current owner was not a signatory) contained a forum-selection clause. *Compare Hellenic*, 464 F.3d at 517[7] *with* Exhibit B at ¶ 17. Finally, there, as here, the classification society's Rules contained a forum-selection clause. *Compare Hellenic*, 464 F.3d at 517 *with* Exhibit A at 2, Section 10.6. Here is a side-by-side comparison of the three forum-selection clauses:

| Forum-Selection Clause quoted in *Hellenic*, 464 F.3d at 517 | Forum-Selection Clause in LR Rules and Regulations (Exhibit A) | Forum-Selection Clause in Irving Contract (Exhibit B) |
|---|---|---|
| Any dispute arising in relation to or as a consequence of these Rules shall only be resolved by the courts of Norway, the Municipal | Any dispute about the Services or the Contract is subject to the exclusive jurisdiction of the English courts and will be governed by English law. | Any dispute, claim, or litigation between any member of the LR Group and the Client arising from or in connection with the Services |

---

[7]The Fifth Circuit does not provide the text of the forum-selection in the contract between the shipowner and the classification society but refers to it on this page of the decision.

| | | |
|---|---|---|
| Court of Oslo being the proper venue. | | provided by LR shall be subject to the exclusive jurisdiction of the English courts and will be governed by English law. |

Additionally, the alleged "misrepresentations" that were the basis of the plaintiff's claims in *Hellenic* were allegedly made regarding the vessel's class-worthiness, which, as the Fifth Circuit noted, necessarily implicated the classification society's Rules and thus required that the plaintiff be bound by the forum-selection clause in those Rules. *Hellenic*, 464 F.3d at 519. Pearl Seas' Complaint likewise repeatedly characterizes LRNA's representations as to the vessel's "class-worthy" status as the basis for its claims and describes its "reliance" on LRNA's adherence to the LR Rules & Regulations. *See, e.g.*, Complaint ¶ 29 ("LRNA continued to represent to Pearl Seas that the [vessel] was class-worthy, SOLAS-complaint and in accordance with Lloyd's Register's technical standards, rules and regulations."); Complaint ¶ 30 ("Because Lloyd's Register is a Classification Society, Pearl Seas relied on [LRNA] to provide accurate information about the condition of the Vessel. Pearl Seas also relied on [LRNA] . . . . to survey, inspect and classify the Vessel in accordance with Lloyd's Register's technical standards, rules and regulations."). According to its own allegations, all of Pearl Seas' claims hinge on its seeking and obtaining the benefit of the LR

Rules and Regulations and on LRNA's provision of classification services under the Irving Contract. *See Hellenic*, 464 F.3d at 519-20.

Perhaps most significantly, Pearl Seas alleges that "Pearl Seas agreed to retain Lloyd's Register as the classification society for its vessels" even ***before*** the Irving Contract between LRNA and Irving was executed.   Complaint ¶ 11-13 (describing   communications "[i]n or about August 2006" when "Pearl Seas began communicating with [LRNA]" about classification ***before*** "Pearl Seas and Irving Shipbuilding … enter into a shipbuilding contract" "[o]n or about September 20, 2006.").

In sum, Pearl Seas' own allegations show that it "embrace[d] the contract" by "knowingly exploiting" the LR Rules and Regulations and the Irving Contract "containing the [forum-selection] clause[s]."   *Hellenic*, 464 F.3d at 518. Accordingly, the forum-selection clauses in (1) the LR Rules and Regulations and (2) the Irving Contract must be enforced against Pearl Seas.  *See* Exhibits A & B.

Because the dispositive facts here are precisely analogous to those in *Hellenic*, the Fifth Circuit's conclusions, which control here, merit extensive quotation:

> Hellenic argues that direct-benefit estoppel is inapplicable because (1) Hellenic received no benefit from DNV's services, and (2) Hellenic is advancing a negligent misrepresentation claim, not a contract-based claim. We disagree. . . .

. . . . Even adhering to Hellenic's version of the events, Hellenic benefitted from DNV's performance of the contract [with the vessel's prior owner]. . . Hellenic specifically acknowledged receiving and reviewing classification documents that expressly refer to the DNV Rules: The key document, the classification certificate, provided that it was "[i]ssued under provisions of the Rules of Det Norske Veritas." . . .

While Hellenic retrospectively maintains that DNV's assurances and classification services ultimately proved to be of little benefit to Hellenic, there is no denying, indeed it is specifically admitted, that, at the critical moment of sale, DNV's performance was essential to Hellenic's decision to purchase the [vessel]. Any lingering doubt whether Hellenic garnered a benefit from DNV's performance of the DNV-Inlet contract is erased by Hellenic's own statements in its complaint: "DNV knew, or should have known," that its representations "were intended for [Hellenic's] *guidance and benefit* in a business transaction."

The very nature of the claim brought requires that DNV's performance under the contract [with Inlet] be for Hellenic's benefit. An element of the cause of action [for negligent misrepresentation by a classification society] is the requirement that the classification society must have "in the course of its profession, supplied false information for [the vessel purchaser's] *guidance* in a business transaction." . . . Having stated a claim that expressly requires that DNV's performance be for Hellenic's benefit, Hellenic cannot avoid the estoppel implications of its position.

Regardless of any benefit, Hellenic maintains that it cannot be bound by the forum-selection clause because it has not asserted contractual claims. Although sounding in tort, Hellenic's claim is based upon DNV's failure to follow its own Rules in classing the [vessel]. . . . Accordingly, if Hellenic has a claim for DNV's misrepresentation, it is only because DNV failed to adhere to its Rules when it classed the [vessel].

The DNV Rules establish the standards of classification, the method of inspection, and the procedure for certifying class; these Rules also contain the forum-selection clause. The duty owed by

> DNV to Hellenic based on DNV's alleged misrepresentations arose from the DNV Rules.  Hellenic's claim based on DNV's failure to perform in accord with its Rules is therefore subject to the Rules' forum-selection clause.  Hellenic cannot embrace the Rules by bringing a claim . . . alleging, in essence, a violation of the DNV Rules without accepting the consequence of those Rules.

464 F.3d at 518-20 (emphasis retained).

If the court were to substitute "Pearl Seas" for "Hellenic," "LRNA" for "DNV," and "Irving" for "Inlet," then this excerpt from the Fifth Circuit's decision could, without further modification, be used as the starting point for the Court's decision on the current motion.  Quite simply, *Hellenic* disposes of the issue of the enforceability of the forum-selection clauses in the Irving Contract and the LR Rules and Regulations:  they are indeed enforceable against Pearl Seas.

## C.    Pearl Seas Cannot Satisfy *Atlantic Marine*'s Mandate.

Because the forum-selection clauses, which point to a foreign forum, are enforceable against Pearl Seas, under *Atlantic Marine*, this action must be dismissed on *forum non conveniens* grounds unless Pearl Seas, as the resisting party, can carry the "heavy burden" of showing that public-interest factors weigh against the presumptively enforceable forum-selection clause.  134 S. Ct. at 583 (noting that "[i]n all but the most unusual cases ..., 'the interest of justice' is served" by enforcing forum-selection clauses).  *Id.*

Long before *Atlantic Marine* was decided, the Supreme Court had found a strong presumption in favor of forum-selection clauses in admiralty cases as a

matter of federal policy. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). To overcome this presumption, Pearl Seas would have to make a "strong showing" either that the forum thus selected is "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court," or that the clause was procured through "fraud or overreaching." *Id.* at 15. Pearl Seas can make no such showing.

To the extent that Pearl Seas argues that it will be "deprived of its day in court" if it is forced to litigate in England (the source of admiralty law) because, as a non-signatory to the Irving Contract, it cannot claim any benefits with respect to that contract, such an argument would only serve to illustrate the lack of merit in Pearl Seas' claims – whether made in this Court or in the proper forum. Pearl Seas' entire Complaint is premised on the contentions that it was ***supposed to benefit*** from LRNA's contract with shipbuilder Irving, and on LRNA's complying with the LR Rules & Regulations. Pearl Seas is either bound to all terms and conditions of the contract between LRNA and Irving or none of them; it cannot take those provisions of the contract that it "likes" to support its claims but reject those it "does not like," such as the forum-selection clause.[8]

---

[8]Pearl Seas' unavailing attempt to state claims based on LRNA's privileged statements about the classification process made in the arbitration proceeding between Pearl Seas and Irving, though not actionable, are also inextricably based on Pearl Seas' contentions that it was supposed to benefit from the Irving Contract and on LRNA's complying with the LR Rules & Regulations.

Pearl Seas cannot show that ***any*** of the public-interest factors[9] – let alone enough to overcome the strong presumption in favor of forum-selection clauses – warrant keeping the case here.   "In all but the most unusual cases," no "extraordinary circumstances" will exist that warrant a refusal to dismiss in accordance with a forum-selection clause.  *Id.* at 582-83; *see also Brown*, 2014 WL 97292, at *4 (listing plaintiff's three public-interest reasons why the case should not be transferred based on a forum-selection clause and finding "none of these circumstances rise to the level of 'most unusual' or 'extraordinary.'") (citing *Atlantic Marine*, 134 S. Ct. at 575, 581, 583). Accordingly, the Court should grant LRNA's motion to dismiss on *forum non conveniens* grounds.

## CONCLUSION

This motion supersedes LRNA's pending 12(b)(3) Motion, Doc. 9, which is withdrawn.  For the foregoing reasons, LRNA respectfully asks that this Court grant its motion to dismiss on *forum non conveniens* grounds.   All claims should be dismissed without prejudice to them being refiled in the Courts of England pursuant to English law.

Respectfully submitted,

---

[9] Public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized interests decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (articulating the factors relevant to the *forum non conveniens* analysis).

      /s/ *Eric J.R. Nichols*
Eric J.R. Nichols – Attorney-in-Charge
enichols@beckredden.com
State Bar No. 14994900
Southern District of Texas Id. 13066
**BECK REDDEN LLP**
515 Congress Avenue, Suite 1750
Austin, Texas 78701
(512) 708-1000 – Telephone
(512) 708-1002 – Facsimile
enichols@beckredden.com


OF COUNSEL:

Gretchen S. Sween
Texas Bar No. 24041996
Southern District of Texas Id. 562080
gsween@beckredden.com
**BECK REDDEN LLP**

Kenneth E Gordon (admitted PHV)
Elliot Schnapp (admitted PHV)
KEGoffice@aol.com
Elliot.Schnapp@ggslawfirm.com
**GORDON, GORDON & SCHNAPP, PC**
437 Madison Avenue
39th Floor
New York, NY 10023
212-355-3200

*Attorneys for Lloyd's Register North America, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the above has been served on all counsel of record on February 19, 2014, via the Court's electronic filing system.

/s/
Gretchen S. Sween

## CERTIFICATE OF CONFERENCE

On February 11, 2014, Pearl Seas filed an Opposed Motion for Leave to Supplement Record Concerning LRNA's Pending Rule 12(b)(3) Motion to Dismiss (Doc. 32, "Motion for Leave to Supplement"). The Motion for Leave to Supplement makes clear that counsel for Pearl Seas opposes the instant motion. Then, Pursuant to Local Rule 7.1D, the undersigned advised Pearl Seas' counsel via e-mail on February 19, 2014 that the instant motion was forthcoming and stated that LRNA presumes from the content of Pearl Seas' Motion for Leave to Supplement that the instant motion is opposed. Counsel for LRNA has confirmed that it intends to oppose this motion.

/s/
Gretchen S. Sween