UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PEARL SEAS CRUISES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:13-cv-02790 |
| | § | |
| LLOYD'S REGISTER NORTH | § | |
| AMERICA, INC., | § | |
| | § | |
| Defendant. | § | JUDGE DAVID HITTNER |

### LLOYD'S REGISTER NORTH AMERICA, INC.'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Lloyd's Register North America, Inc. ("LRNA"), by and through the undersigned counsel, and for its Answer to the First Amended Complaint ("FAC") of Plaintiff Pearl Seas Cruises, LLC ("Pearl Seas") does hereby declare and state as follows:

1.     LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the FAC.

2.     LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of the FAC.

3.     LRNA admits the allegations contained in Paragraph 3 of the FAC.

4.     LRNA admits the allegations contained in the first sentence of Paragraph 4 of the FAC.  LRNA denies the allegations contained in the second sentence of Paragraph 4 of the FAC.

5.     LRNA admits the allegations contained in the first sentence of Paragraph 5 of the FAC.  LRNA denies the remaining allegations in Paragraph 5 of the FAC.

6.     LRNA denies the allegations contained in Paragraph 6 of the FAC.

7.     LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the FAC.

8.     LRNA denies the allegations contained in Paragraph 8 of the FAC.

9.     The allegations in the last sentence of Paragraph 9 of the FAC are too vague and ambiguous to allow LRNA to form a belief as to the truth of the allegations contained therein.  LRNA otherwise denies the allegations contained in Paragraph 9 of the FAC.

10.    LRNA admits the allegations contained in the first and second sentences of Paragraph 10 of the FAC.   LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the last sentence.

11.    LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first and second sentences of

Paragraph 11 of the FAC.  Otherwise, LRNA denies the allegations contained in Paragraph 11 of the FAC.

12.     LRNA denies the allegations contained in Paragraph 12 of the FAC.

13.     LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the FAC.

14.     LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the FAC.

15.     LRNA denies the allegations contained in Paragraph 15 of the FAC.

16.     LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the FAC.

17.     LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the FAC.

18.     LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the FAC.

19.     LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the FAC concerning the obligations of Irving Shipbuilding, Inc. ("Irving") under its contract with Pearl Seas.  Otherwise, LRNA denies the allegations contained in Paragraph 19 of the FAC.

20.     With respect to the allegations in Paragraph 20 of the FAC, LRNA admits that it entered into an agreement with Pearl Seas on or about October 17, 2006, entitled "Request for Marine Services."   LRNA admits that LRNA performed the services specified in the agreement and that Pearl Seas made payments due under the agreement.   LRNA otherwise denies the allegations contained in Paragraph 20 of the FAC.

21.     LRNA denies the allegations contained in Paragraph 21 of the FAC.

22.     LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 22 of the FAC.  LRNA admits that it issued a press release on or about January 9, 2007 which stated in part, "Pearl Seas Cruises, LLC has selected Lloyd's Register for classification and design appraisal services for its new cruise ship."   Otherwise, LRNA denies the allegations contained in Paragraph 22 of the FAC.

23.     LRNA admits that it entered into a contract with Irving in December 2006, whereby LRNA agreed to provide surveying, classification, and certification services to Irving related to the Pearl Mist (the "Classification Contract"). Otherwise, LRNA denies the allegations contained in Paragraph 23 of the FAC.

24.     With regard to the allegations contained in Paragraph 24 of the FAC, LRNA admits that the Classification Contract stated that Irving "request[s] that the vessel be specially surveyed during its construction and that a classification

4

certificate be issued" for "Passenger Ship Safety," among others, which would include a certification that the Pearl Mist's fire suppression systems were in compliance with SOLAS at the time of the certification.  LRNA further admits that the fire suppression system on a ship is one of the ship systems employed to protect the safety of its passengers, crew, and/or cargo.  Otherwise, LRNA denies the allegations in Paragraph 24 of the FAC.

25.    LRNA denies the allegations contained in Paragraph 25 of the FAC.

26.    LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the FAC.

27.    LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the FAC.

28.    LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 of the FAC.

29.    LRNA objects to the allegations in Paragraph 29 of the FAC as vague and ambiguous regarding what is meant by "continued to represent" and is therefore without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein.

30.    LRNA denies the allegations in Paragraph 30 of the FAC.

31.    LRNA denies the allegations in Paragraph 31 of the FAC.

32.    LRNA denies the allegations in Paragraph 32 of the FAC.

33.     LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the FAC.

34.     LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 of the FAC.

35.     LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the FAC with regard to when Pearl Seas rejected the Vessel and whether that rejection was timely. Otherwise, LRNA denies the allegations contained in Paragraph 35 of the FAC.

36.     With respect to the allegations in Paragraph 36 of the FAC, LRNA admits that the Vessel was removed from Irving's shipyard.  LRNA is without knowledge or information sufficient to form a belief as the truth of the remaining allegations in Paragraph 36 of the FAC.

37.     LRNA denies the allegations contained in Paragraph 37 of the FAC.

38.     LRNA denies the allegations contained in Paragraph 38 of the FAC.

39.     With regard to the allegations contained in Paragraph 39 of the FAC, LRNA admits that on August 28, 2009, Pearl Seas' John Hunter sent an email to LRNA's Bud Streeter, among others, which requested that "Lloyds confirm that all of the ship's fire boundaries are indeed intact and functioning."  LRNA further admits that the email also stated that "water was observed leaking from the fourth deck down to the third deck" and that "[w]e believe that the integrity of fire

boundaries is a wider problem." Otherwise, LRNA denies the allegations contained in Paragraph 39.

40.    LRNA admits that the allegations contained in Paragraph 40 of the FAC accurately quote portions of the cited communications.

41.    With regard to the allegations contained in Paragraph 41, LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegation that the arbitration panel which heard the dispute between Irving and Pearl Seas relied on Mr. Streeter's written declaration. Otherwise, LRNA admits the allegations contained in Paragraph 41 of the FAC accurately quote portions of the cited declaration.

42.    LRNA admits the allegations contained in Paragraph 42 of the FAC accurately quote portions of the cited declaration.

43.    LRNA admits the allegations contained in the first sentence of Paragraph 43 of the FAC accurately quote portions of the cited declaration. LRNA further admits a letter dated May 2, 2010, from LRNA's John Hicks to International Registries, Inc.'s Jack Polderman, states in part that "it is recommended that an Equivalency for the arrangement be granted under SOLAS I/5.1," and also states in part that SOLAS II-2/2.3 "would provide an alternative process which could be followed to document the 'alternative' or equivalent

arrangement."  Otherwise, LRNA denies the allegations contained in Paragraph 43 of the FAC.

44.    LRNA denies the allegations contained in Paragraph 44 of the FAC.

45.    LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45 of the FAC.

46.    LRNA admits the allegations contained in Paragraph 46 of the FAC.

47.    LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 of the FAC with regard to whether Mr. Womack's declaration is accurately quoted.   LRNA is further without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 47 of the FAC. Otherwise, LRNA denies the allegations contained in Paragraph 47 of the FAC.

48.    LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 of the FAC with regard to whether Mr. Womack's declaration is accurately quoted.   Otherwise, LRNA denies the allegations contained in Paragraph 48 of the FAC.

49.    LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 of the FAC with regard to whether Mr. Womack's declaration is accurately quoted.   Otherwise, LRNA denies the allegations contained in Paragraph 49 of the FAC.

50.     With regard to the allegations contained in Paragraph 50 of the FAC, LRNA admits that Mr. Streeter testified in part on March 26, 2010 that his declarations were accurate at the time they were made and that "I still believe the vessel's class worthy."   Otherwise, LRNA denies the allegations contained in Paragraph 50 of the FAC.

51.     LRNA denies the allegations contained in Paragraph 51 of the FAC.

52.     LRNA denies the allegations contained in Paragraph 52 of the FAC.

53.     With regard to the allegations contained in Paragraph 53 of the FAC, LRNA admits that a spreadsheet created by John Hicks related to a July 21, 2011 meeting among representatives of Pearl Seas, Irving, and LRNA states in part, in an entry related to A-class electrical penetrations, that "LRNA certifies that all the cable penetrations have been surveyed and accepted," and that the spreadsheet also contains an indication that Pearl Seas expressed a continuing belief that there are "still significant issues."   Otherwise, LRNA denies the allegations contained in Paragraph 53.

54.     With regard to the allegations contained in Paragraph 54 of the FAC, LRNA admits that Mr. Hicks sent a letter, dated October 17, 2011, to representatives of Pearl Seas and Irving, which attached a Passenger Ship Survey Checklist.  LRNA further admits that a "yes" was indicated next to the following entries:  (a) "Fire insulation in good conditions and in accordance with approved

plan (including openings in 'A' and 'B' class divisions, ventilation systems, windows, and side scuttles and the use of combustible material)" and (b) "Precautions against shock, fire, and other electrical hazards."  Otherwise, LRNA denies the allegations contained in Paragraph 54 of the FAC.

55.    LRNA admits that portions of Mr. Womack's October 20, 2011 report are quoted in allegations contained in Paragraph 55 of the FAC.  Otherwise, LRNA denies the allegations contained in Paragraph 55 of the FAC.

56.    LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56 of the FAC with regard to whether Mr. Womack's statements on January 6, 2012 are accurately quoted. Otherwise, LRNA denies the allegations contained in Paragraph 56 of the FAC.

57.    LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 57 of the FAC, and Mr. Womack's conclusions in written form will speak for themselves.  Otherwise, LRNA denies the allegations contained in Paragraph 57 of the FAC.

58.    LRNA denies the allegations contained in Paragraph 58 of the FAC.

59.    LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 59 of the FAC.

60.    LRNA denies the allegations in Paragraph 60 of the FAC, and SOLAS regulations and requirements speak for themselves.

61.     With regard to the allegations contained in Paragraph 61 of the FAC, LRNA admits that a letter to LRNA's Simon Grice, dated February 10, 2009, from S.R. Calhoun of the U.S. Coast Guard ("USCG") states in part that "two small lounges . . . have been inappropriately arranged with direct access to adjacent stairway enclosures" and contains the language "Please address the issue, providing alternative access to or egress from these spaces."  Otherwise, LRNA denies the allegations contained in Paragraph 61 of the FAC.

62.     LRNA admits the allegations contained in Paragraph 62 of the FAC accurately quote a portion of the cited communication.

63.     LRNA admits the allegations contained in Paragraph 63 of the FAC accurately quote a portion of the cited communication.  Otherwise, LRNA denies the allegations contained in Paragraph 63 of the FAC.

64.     LRNA admits the allegations contained in Paragraph 64 of the FAC accurately quote a portion of the cited communication.  Otherwise, LRNA denies the allegations contained in Paragraph 64 of the FAC.

65.     With regard to the allegations contained in Paragraph 65 of the FAC, LRNA admits that a letter to Mr. Grice, dated December 1, 2009, from the USCG's R.J. Jenkins states in part that two lounges' "direct access to the adjacent stairway enclosure remains unacceptable."   Otherwise, LRNA denies the allegations contained in Paragraph 65 of the FAC.

66.     LRNA admits the allegations contained in Paragraph 66 of the FAC accurately quote portions of the cited communication.   Otherwise, LRNA denies the allegations contained in Paragraph 66 of the FAC.

67.     LRNA denies the allegations contained in Paragraph 67 of the FAC.

68.     With regard to the allegations contained in Paragraph 68, LRNA admits that an email to Pearl Seas' Timothy Beebe, dated August 19, 2011, from the USCG's Joshua Pennington states in part that "[f]rom discussions with the Marine Safety Center (MSC) I have determined that the PEARL MIST has significant SFP and egress issues that have not been addressed since [Pearl Seas'] plan submittal."   Otherwise, LRNA denies the allegations contained in Paragraph 68 of the FAC.

69.     LRNA admits the allegations contained in Paragraph 69 of the FAC accurately quote portions of the cited communications.   Otherwise, LRNA denies the allegations contained in Paragraph 69 of the FAC.

70.     LRNA admits that there were communications with the United States Coast Guard ("USCG") on March 19, 2012, and that the communications speak for themselves.   Otherwise, LRNA denies the allegations contained in Paragraph 70 of the FAC.

71.     LRNA admits the allegations contained in Paragraph 71 of the FAC.

72.     LRNA denies the allegations contained in Paragraph 72 of the FAC.

73.    With regard to the allegations contained in Paragraph 73 of the FAC, LRNA admits that it exchanged correspondence with the USCG concerning the Pearl Mist.  Otherwise, LRNA denies the allegations contained in Paragraph 73 of the FAC.

74.    LRNA admits that the allegations in Paragraph 74 of the FAC accurately quote portions of Mr. Womack's March 23, 2012 report.  Otherwise, LRNA denies the allegations contained in Paragraph 74 of the FAC.

75.    LRNA denies the allegations contained in Paragraph 75 of the FAC.

76.    LRNA denies the allegations contained in Paragraph 76 of the FAC.

77.    LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 77 of the FAC.  Otherwise, LRNA denies the allegations contained in Paragraph 77 of the FAC.

78.    LRNA denies the allegations contained in Paragraph 78 of the FAC.

79.    LRNA denies the allegations contained in Paragraph 79 of the FAC.

80.    LRNA admits that the allegations contained in Paragraph 80 of the FAC accurately quote a portion of SOLAS II-2 Reg. 9 § 3.2.  Otherwise, LRNA denies the allegations contained in Paragraph 80 of the FAC.

81.    LRNA admits that rules, regulations, and standards applicable to the design and construction of the Pearl Mist speak for themselves.  Otherwise, LRNA denies the allegations the allegations in Paragraph 81 of the FAC.

13

82.     LRNA admits that the allegations contained in Paragraph 82 of the FAC accurately quote portions of Mr. Womack's October 20, 2011 report. Otherwise, LRNA denies the allegations contained in Paragraph 82 of the FAC.

83.     LRNA admits the allegations in the first sentence of Paragraph 83 of the FAC accurately quote portions of the cited communication.  Otherwise, LRNA denies the allegations contained in Paragraph 83 of the FAC.

84.     LRNA admits that Mr. Grice stated in part in a letter to the USGC, dated January 24, 2012, that "LRNA have been advised that fire insulation suitably rated to achieve B15 rate of rise classification has been proposed to be fitted on the existing B-0 cabin/toile module ceilings."  Otherwise, LRNA denies the allegations contained in Paragraph 84 of the FAC.

85.     LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 85 of the FAC.  Otherwise, LRNA denies the allegations contained in Paragraph 85 of the FAC.

86.     LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 86 of the FAC.

87.     LRNA denies the allegations contained in Paragraph 87 of the FAC.

88.     LRNA is without knowledge or information sufficient to form a belief as to Pearl Seas' opinion regarding the meaning of "long relationship" in

Paragraph 88 of the FAC.  Otherwise, LRNA denies the allegations contained in Paragraph 88 of the FAC.

89.     LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 89 of the FAC.  Otherwise, LRNA denies the allegations contained in Paragraph 89 of the FAC.

90.     LRNA denies the allegations contained in the first sentence of Paragraph 90 of the FAC.  LRNA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 90 of the FAC.

91.     LRNA denies the allegations contained in Paragraph 91 of the FAC.

92.     LRNA denies the allegations contained in Paragraph 92 of the FAC.

93.     LRNA denies the allegations contained in Paragraph 93 of the FAC.

94.     LRNA denies the allegations contained in Paragraph 94 of the FAC.

95.     LRNA denies the allegations contained in Paragraph 95 of the FAC.

96.     LRNA repeats and incorporates herein each and every response to Paragraphs 1-95 of the FAC set forth above.

97.     LRNA denies the allegations contained in Paragraph 97 of the FAC.

98.     LRNA denies the allegations contained in Paragraph 98 of the FAC.

99.     LRNA denies the allegations contained in Paragraph 99 of the FAC.

100.   LRNA denies the allegations contained in Paragraph 100 of the FAC.

101.   LRNA repeats and incorporates herein each and every response to Paragraphs 1-100 of the FAC set forth above.

102.   LRNA denies the allegations contained in Paragraph 102 of the FAC.

103.   LRNA denies the allegations contained in Paragraph 103 of the FAC.

104.   LRNA repeats and incorporates herein each and every response to Paragraphs 1-103 of the FAC set forth above.

105.   LRNA denies the allegations contained in Paragraph 105 of the FAC.

106.   LRNA denies the allegations contained in Paragraph 106 of the FAC.

107.   LRNA denies the allegations contained in Paragraph 107 of the FAC.

108.   LRNA denies the allegations contained in Paragraph 108 of the FAC.

109.   LRNA repeats and incorporates herein each and every response to Paragraphs 1-108 of the FAC set forth above.

110.   LRNA denies the allegations contained in Paragraph 110 of the FAC.

111.   LRNA denies the allegations contained in Paragraph 111 of the FAC.

112.   LRNA denies the allegations contained in Paragraph 112 of the FAC.

113.   LRNA repeats and incorporates herein each and every response to Paragraphs 1-112 of the FAC set forth above.

114.   LRNA denies the allegations contained in Paragraph 114 of the FAC.

115.   With regard to the allegations contained in Paragraph 115 of the FAC, LRNA admits that Mr. Streeter signed a declaration dated September 23, 2009, which states in part: (a) "[Irving] has built the Vessel in accordance with LR's technical requirements," (b) LRNA "is prepared to issue a class certificate for the Vessel, based on the information now available to [LRNA] and as set forth below, once final regulatory requirements imposed by IRI or the Marshall Islands have been fulfilled," (c) LRNA's "surveyors continuously surveyed and inspected the Vessel throughout the course of construction, which ended, for the most part, in April 2009," (d) "[i]n sea trials conducted in April 2009, [LRNA's] surveyors confirmed that all class related systems complied with the applicable LR Rules and Regulations," (e) "the Vessel has been completed in accordance with LR's applicable rules and regulations," and (f) "the Vessel is class-worthy."  Otherwise, LRNA denies the allegations contained in Paragraph 115 of the FAC.

116.   With regard to the allegations contained in Paragraph 116 of the FAC, LRNA admits that Mr. Streeter's October 20, 2009 email to Mr. Hunter states in part, "We intend to document the concerns as you raised them and we will address them as necessary at the time of final surveys and delivery to the owner is agreed by the builder."  Otherwise, LRNA denies the allegations contained in Paragraph 116 of the FAC.

117.   LRNA admits that the allegations contained in Paragraph 117 of the FAC quote, in part, an email sent by Mr. Streeter to Mr. Hunter, among others, on October 20, 2009.  Otherwise, LRNA denies the allegations contained in Paragraph 117 of the FAC.

118.   With regard to the allegations contained in Paragraph 118 of the FAC, LRNA admits Mr. Streeter wrote in part in an October 23, 2009 email to Mr. Hunter, among others, that "[d]ue to the encapsulated and stand-alone nature of the construction method including the double bulkheads and double ceilings plus the A-15 insulation of the Deck and Deckhead - this construction methodology complies with SOLAS requirements."   Otherwise, LRNA denies the allegations contained in Paragraph 118 of the FAC.

119.   With regard to the allegations contained in Paragraph 119 of the FAC, LRNA admits that Mr. Streeter signed a declaration dated November 16, 2009, which states in part:  "The fact that LR has not issued a class certificate does not mean that LR does not view the ship to be class-worthy.  The ship continues, in LR's view, to be class-worthy.  Before LR will issue a class certificate, however, the ship must be brought out of layup and readied for delivery in order to go into service.  Once readied, the previously noted survey must be held and any found deficiencies must be rectified ... The purpose of that pre-delivery survey will be to ensure that the ship and critical systems continue to be class-worthy so that LR can

18

issue a class certificate when the ship is completed and delivered."  Otherwise, LRNA denies the allegations contained in Paragraph 119 of the FAC.

120.  LRNA denies the allegations contained in Paragraph 120 of the FAC.

121.  LRNA denies the allegations contained in Paragraph 121 of the FAC.

122.  LRNA repeats and incorporates herein each and every response to Paragraphs 1-121 of the FAC set forth above.

123.  LRNA denies the allegations contained in Paragraph 123 of the FAC.

124.  LRNA denies the allegations contained in Paragraph 124 of the FAC.

## <u>AFFIRMATIVE DEFENSES</u>

For further answer, if any is needed, LRNA states as follows:

## FIRST DEFENSE

Some or all of Pearl Seas' claims are barred by the applicable statute of limitations and/or doctrine of laches.

## SECOND DEFENSE

Some or all of Pearl Seas' claims are barred because the claims are based on LRNA's statements that are absolutely privileged and cannot support a civil action as a matter of law.

### THIRD DEFENSE

Some or all of Pearl Seas' claims are barred because Pearl Seas' own acts and/or omissions caused or contributed to its claimed injury, and/or were the result of Pearl Seas' contributory negligence.

### FOURTH DEFENSE

Pearl Seas' claimed injuries, if any, were proximately caused by the acts and/or omissions of persons other than LRNA.

### FIFTH DEFENSE

To the extent Pearl Seas seeks to enforce LRNA's purported obligations under LRNA's contract with Irving as a third-party beneficiary, some or all of Pearl Seas' claims for damages are barred as they have been released and/or waived.

### SIXTH DEFENSE

To the extent Pearl Seas seeks to enforce LRNA's purported obligations under LRNA's contract with Irving as a third-party beneficiary, some or all of Pearl Seas' claims are barred by the doctrine of accord and satisfaction.

### SEVENTH DEFENSE

Some or all of Pearl Seas' claims are barred by collateral estoppel.

### EIGHTH DEFENSE

To the extent that Pearl Seas seeks to apply Texas law to any or all of Pearl Seas' claims, and a court determines that such law should apply, any recovery of damages on one or more of those claims would be limited by damages caps established by statute, including, but not limited to, TEX. CIV. PRAC. & REM. CODE § 41.008.  Otherwise, LRNA will seek application of limitations on recovery and recovery of damages based on the Court's determination of other applicable law, including the applicable law of England and/or by any applicable federal maritime and constitutional law.

## **PRAYER FOR RELIEF**

WHEREFORE, LRNA respectfully requests that the Court, upon final hearing of this matter, grant the following relief against Pearl Seas:

A.   Entry of a Final Judgment dismissing with prejudice all of Pearl Seas' claims against LRNA; and

B.   Awarding LRNA any other relief, in law or in equity, to which the Court finds LRNA justly entitled.

21

Respectfully submitted,


 /s/  *Eric J.R. Nichols*
Eric J.R. Nichols – Attorney-in-Charge
enichols@beckredden.com
State Bar No. 14994900
Southern District of Texas Id. 13066
BECK REDDEN LLP
515 Congress Avenue, Suite 1750
Austin, Texas 78701
(512) 708-1000 – Telephone
(512) 708-1002 – Facsimile
enichols@beckredden.com




OF COUNSEL:

Gretchen S. Sween
Texas Bar No. 24041996
Southern District of Texas ID No. 562080
gsween@beckredden.com
BECK REDDEN LLP

Kenneth E Gordon (admitted PHV)
Elliot Schnapp (admitted PHV)
KEGoffice@aol.com
Elliot.Schnapp@ggslawfirm.com
GORDON, GORDON & SCHNAPP, PC
437 Madison Avenue
39th Floor
New York, NY 10023
212-355-3200

*Attorneys for Lloyd's Register North America, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the above has been served on all counsel of record on September 8, 2014, via the Court's electronic filing system.

_____/s/_____

Gretchen S. Sween